UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAYMOND JEAN CHARLES PECK,

                Plaintiff,

v.

ROBERT JAMES KIRKPATRICK et al.,

                Defendants.
_____/

Case No. 1:25-cv-725

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## **Discussion**

### I.    **Factual Allegations**

Plaintiff filed this suit while he was detained at the Berrien County Jail. (*See* Compl., ECF No. 1, PageID.1.) Plaintiff sues the following Defendants: Berrien County; Berrien County Sheriff's Deputies Robert James Kirkpatrick, Joshua Sherrick, Thomas Mark Dumminger, and

Elizabeth Ann Turner; Berrien County Lieutenant Unknown Margo; and Berrien County Sheriff Chuck Heit. (*Id.*, PageID.6.)

In Plaintiff's complaint, he alleges that on January 15, 2025, at his trial, the judge "asked several deputies to remove [Plaintiff] from the courtroom."[1] (*Id.*, PageID.7.) Plaintiff states that the deputies present in the courtroom were Defendants Kirkpatrick, Sherrick, and Dumminger. (*Id.*) Plaintiff claims that at the time that he was removed, he "was not acting in a threatening manner or resisting." (*Id.*) Plaintiff claims that "[w]ithout being given a command or a chance to comply with one," Defendants Sherrick and Dumminger "seized [his] arms and lifted [him] to his feet," and that while these Defendants "had complete control over [Plaintiff's] person," Defendant Kirkpatrick "approached [Plaintiff] and shoved [Plaintiff] by the neck." (*Id.*)

Thereafter, when they were in the back hallway, Plaintiff "continuously notified the deputies that they were hurting [him] and that [he] wouldn't be a problem." (*Id.*) Plaintiff alleges that Defendant Kirkpatrick then "approached [Plaintiff] from behind and shoved [him] by the neck," and "this time [it was] harder than the first" time. (*Id.*) Plaintiff claims that some point, Defendant Turner "appeared to investigate the commotion." (*Id.*)

Subsequently, Plaintiff was placed in a holding cell, and "after becoming very distressed from the amount of force used against [Plaintiff, he] attempted to remove the stun cuff located on my right ankle due to [Plaintiff] feeling it was too tight." (*Id.*) Defendant Kirkpatrick then "came to the cell door and aimed a can of OC spray at [Plaintiff] through the track slot," and Kirkpatrick told Plaintiff "not to touch the stun cuff and submit to being handcuffed." (*Id.*) Plaintiff "complied," and Defendant Kirkpatrick entered the cell to remove the stun cuff. (*Id.*) Plaintiff told

---

[1] In this Opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

Defendant Kirkpatrick that he "was in pain and that the cuffs were too tight," and Defendant

Kirkpatrick "responded by repeatedly shoving [Plaintiff] against the wall and telling [Plaintiff] to

get against the wall." (*Id.*) "The stun cuff was removed and the deputies exited the cell and

instructed [Plaintiff] to back up to the tray slot." (*Id.*) Plaintiff "complied," and Defendant

Kirkpatrick "uncuffed one hand after twisting them very hard." (*Id.*) Plaintiff "pulled [his] free

hand through the tray slot and struck [Kirkpatrick's] hand in an attempt to free [Plaintiff's] other

right hand." (*Id.*) Plaintiff alleges that "[a]fter many verbal attempts of protecting [him]self and

avoiding harm failed," Defendant Kirkpatrick "opened the cell door and sprayed [Plaintiff] in the

face with OC spray." (*Id.*) Plaintiff "turned away and yelled stop," and Defendant Kirkpatrick

"threw [Plaintiff] into the wall causing [Plaintiff] to hit [his] head." (*Id.*) Defendant Kirkpatrick

then "began kneeing [Plaintiff] in [his] side and in return, [Plaintiff] turned around and struck him

in the face." (*Id.*) Defendant Dumminger then "sprayed [Plaintiff] again with OC spray and they

got [Plaintiff] on the ground." (*Id.*) Plaintiff was then "dragged out of the cell by the handcuffs."

(*Id.*)

Plaintiff then sets forth statements that non-party sheriff's deputies made to him in

February 2025 and on June 11, 2025. (*Id.*, PageID.12.)

Additionally, without providing any specific dates, Plaintiff alleges that Defendant Margo

"review[ed] the incident and fail[ed] to take disciplinary action against Kirkpatrick." (*Id.*,

PageID.10.) Further, Plaintiff alleges that Defendant Heit is "responsible for the safety and

wellbeing of [Plaintiff when] in his custody," and that Berrien County is "liable for all of its

employees and the failure to enforce a proper work environment." (*Id.*)

Based on the foregoing allegations, Plaintiff raises Fourth Amendment claims, Fifth

Amendment claims, Eighth Amendment claims, Fourteenth Amendment due process claims, and

§ 1986 civil conspiracy claims. (*Id.*, PageID.9–10.) Plaintiff also raises several state-law claims. (*Id.*) As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.11.)

**II.      Failure to State a Claim Standard**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

4

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Analysis

#### A.    Defendant Berrien County

Plaintiff alleges that Berrien County is "liable for all of its employees and the failure to enforce a proper work environment, as well as failing to provide a safe environment inside the facilities that house pretrial detainees." (Compl., ECF No. 1, PageID.11.)

As an initial matter, Berrien County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the

5

force of law." *Doe v. Claiborne Cnty*., 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff's allegations against Berrien County essentially rest on a theory of vicarious liability, and therefore do not state a claim. To the extent that Plaintiff intended to suggest the existence of a custom regarding a failure to protect inmates or to use excessive force against inmates, his allegations are wholly conclusory. To show that a governmental entity has an unlawful custom, a plaintiff must show the existence of "practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Plaintiff's allegations do not show a widespread pattern. And, to the extent that Plaintiff intended to suggest a pattern, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, for these reasons, Plaintiff fails to state a claim against Berrien County.

### B.    Defendants Margo and Heit

Plaintiff claims that on an unspecified date, Defendant Margo "review[ed] the incident and fail[ed] to take disciplinary action against Kirkpatrick," and Plaintiff alleges that Defendant Heit is:

> responsible for the safety and wellbeing of [Plaintiff] in his custody and failing to provide a safe environment and having the ability to aid or prevent wanton and unnecessary behavior of employes by allowing misconduct to become common behavior in his work place and not disciplining staff or investigating grievances or incidents.

(Compl., ECF No. 1, PageID.10.)

As an initial matter, Plaintiff's allegations against Defendants Margo and Heit are entirely conclusory and are presented without any supporting facts. Such conclusory allegations without any supporting facts are insufficient to show that Defendants Margo and Heit were personally

involved in the alleged violations of Plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Moreover, to the extent that Plaintiff seeks to hold Defendants Margo and Heit liable due to their supervisory positions, government officials, such as Defendants Margo and Heit, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*,

995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Margo and Heit

encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly

acquiesced in their conduct. Plaintiff's conclusory allegations of supervisory responsibility are

insufficient to show that Defendants Margo and Heit were personally involved in the alleged

violations of Plaintiff's constitutional rights. Therefore, for these reasons, Plaintiff fails to state

any claim upon which relief may be granted against Defendants Margo and Heit.

### C.      Fourth Amendment and Fifth Amendment Claims

Plaintiff claims that his Fourth Amendment rights and Fifth Amendment rights were

violated. (Compl., ECF No. 1, PageID.9–10.) However, Plaintiff fails to allege any facts that would

implicate alleged Fourth Amendment violations, and Plaintiff brings claims against county

officials, not federal officials, meaning that his due process claims are properly brought under the

Fourteenth Amendment, not the Fifth Amendment. And, Plaintiff fails to allege any facts that

implicate any other Fifth Amendment claims. Accordingly, Plaintiff's Fourth Amendment and

Fifth Amendment claims will be dismissed.

### D.      Eighth Amendment and Fourteenth Amendment Claims

Plaintiff alleges that Defendants Kirkpatrick, Sherrick, and Dumminger used excessive

force against him on January 15, 2025, and he alleges that Defendant Turner failed to protect him

from this use of force. (*See* Compl., ECF No. 1, PageID.9–10.)

When setting forth his excessive force and failure to protect claims, Plaintiff references the

Eighth Amendment and Fourteenth Amendment. (*See id*.) However, it appears that Plaintiff was a

pretrial detainee at the time of the events at issue in the complaint. (*See id.*, PageID.7.) As

8

explained below, as a pretrial detainee, Plaintiff's claims are properly brought pursuant to the Fourteenth Amendment, and any intended Eighth Amendment claims will be dismissed.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the United States Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). Specifically, the United States Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

However, *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592. Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to show deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596–97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). That is, a pretrial detainee must show that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of

9

harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). Further, a pretrial detainee must still show that he faced a sufficiently serious risk to his health or safety to satisfy the objective prong. *Cf. Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (stating that "*Brawner* left the 'objectively serious medical need' prong untouched").

In Plaintiff's complaint, he alleges that on January 15, 2025, at his trial, the judge "asked several deputies to remove [Plaintiff] from the courtroom," and the deputies present in the courtroom were Defendants Kirkpatrick, Sherrick, and Dumminger. (Compl., ECF No. 1, PageID.7.) Plaintiff claims that at the time that he was removed, he "was not acting in a threatening manner or resisting" and that "[w]ithout being given a command or a chance to comply with one," Defendants Sherrick and Dumminger "seized [his] arms and lifted [him] to his feet." (*Id.*) Plaintiff alleges that Defendant Kirkpatrick then "approached [Plaintiff] and shoved [Plaintiff] by the neck." (*Id.*) Thereafter, when they were in the back hallway, Defendant Kirkpatrick "approached [Plaintiff] from behind and shoved [him] by the neck," and "this time [it was] harder than the first." (*Id.*) Subsequently, Plaintiff was placed in a holding cell, and while in the holding cell, Plaintiff told Defendant Kirkpatrick that he "was in pain and that the cuffs were too tight," and Defendant Kirkpatrick "responded by repeatedly shoving [Plaintiff] against the wall and telling [Plaintiff] to get against the wall." (*Id.*) The deputies then exited Plaintiff's cell, and through the tray slot, Defendant Kirkpatrick "uncuffed one hand after twisting them very hard." (*Id.*) Plaintiff then "pulled [his] free hand through the tray slot and struck [Kirkpatrick's] hand in an attempt to free [Plaintiff's] other right hand." (*Id.*) Plaintiff alleges that "[a]fter many verbal attempts of protecting [him]self and avoiding harm failed," Defendant Kirkpatrick "opened the cell door and sprayed [Plaintiff] in the face with OC spray." (*Id.*) Plaintiff "turned away and yelled stop," and Defendant

10

Kirkpatrick "threw [Plaintiff] into the wall causing [Plaintiff] to hit [his] head." (*Id.*) Defendant Kirkpatrick then "began kneeing [Plaintiff] in [his] side and in return, [Plaintiff] turned around and struck him in the face." (*Id.*) Defendant Dumminger then "sprayed [Plaintiff] again with OC spray and they got [Plaintiff] on the ground." (*Id.*) Plaintiff was then "dragged out of the cell by the handcuffs." (*Id.*)

As noted above, in *Kingsley*, the United States Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. The Supreme Court explained that "[a] court (judge or jury) cannot apply this standard mechanically," noting that "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (citations omitted). The Supreme Court further explained that the following non-exclusive factors "may bear on the reasonableness or unreasonableness of the force used:"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citation omitted).

Applying the standard set forth in *Kingsley*, the Court concludes that Plaintiff has failed to state Fourteenth Amendment excessive force claims against Defendants Sherrick and Dumminger. Plaintiff alleges that after the judge had ordered that he be removed from the courtroom, "[w]ithout being given a command or a chance to comply with one," Defendants Sherrick and Dumminger "seized [his] arms and lifted [him] to his feet." (Compl., ECF No. 1, PageID.7.) Plaintiff alleges no further facts to suggest that Defendants Sherrick and Dumminger used any other type of force during this specific interaction, and he does not allege that he suffered any injury. Under these circumstances, Plaintiff fails to allege sufficient facts to show that Defendants Sherrick and

11

Dumminger seizing Plaintiff's arms and lifting him to his feet constituted an objectively unreasonable use of force. Plaintiff does not allege that Defendant Sherrick used any other force against him on January 15, 2025; therefore, Plaintiff's excessive force claims against Defendant Sherrick will be dismissed for failure to state a claim.

As to Defendant Dumminger, Plaintiff also alleges that during a later interaction in the holding cell where Plaintiff "struck [Defendant Kirkpatrick] in the face," Defendant Dumminger then "sprayed [Plaintiff] . . . with OC spray and they got [Plaintiff] on the ground." (*Id.*) Plaintiff's own factual allegations show that he was uncooperative and that he had used force against a deputy prior to Defendant Dumminger using the OC spray. Under these circumstances, Plaintiff fails to show that Defendant Dumminger's use of the OC spray after Plaintiff "struck [Defendant Kirkpatrick] in the face" constituted an objectively unreasonable use of force. And, Plaintiff's allegation that "they [then] got [Plaintiff] on the ground" after he had "struck [Defendant Kirkpatrick] in the face" also does not show that an objectively unreasonable force was used. Thus, for the reasons set forth above, Plaintiff's excessive force claims against Defendant Dumminger will be dismissed.

With respect to Defendant Kirkpatrick, although Plaintiff has by no means proven his excessive force claims against Defendant Kirkpatrick, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's excessive force claims against Defendant Kirkpatrick at this early stage of the proceedings.

Finally, as to Defendant Turner, Plaintiff alleges that at some point while Plaintiff and the other deputies were in the back hallway, Defendant Turner "appeared to investigate the commotion." (*Id.*) Plaintiff does not allege that any force was being used against him at the time that Defendant Turner was in the back hallway. (*See id.*) Under these circumstances, Plaintiff fails

to show that Defendant Turner recklessly disregarded any risk of harm to Plaintiff. *See Brawner*, 14 F.4th at 596. Therefore, Plaintiff's failure to protect claims against Defendant Turner will be dismissed.

In summary, Plaintiff's Eighth Amendment claims will be dismissed. Further, Plaintiff's Fourteenth Amendment excessive force and failure to protect claims against Defendants Sherrick, Dumminger, and Turner will be dismissed. Plaintiff's Fourteenth Amendment excessive force claims against Defendant Kirkpatrick will remain in the case.

### E.    Section 1986 Civil Conspiracy Claims

Plaintiff alleges that Defendants engaged in a civil conspiracy in violation of § 1986. (Compl., ECF No. 1, PageID.9–10.)

Section 1986 provides as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person with reasonable diligence could have prevented . . . .

42 U.S.C. § 1986. The cause of action under § 1986, by its terms, is premised on the violation of § 1985.

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[2] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the

---

[2] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff fails to allege sufficient facts to suggest that Defendants' alleged actions were motivated by Plaintiff's membership in a distinct class. Therefore, Plaintiff fails to state any claim under § 1985.

The cause of action under § 1986, by its terms, is premised on the violation of § 1985. Because Plaintiff fails to state any claim under § 1985, his claims under § 1986 fail as well. *See Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that § 1986 is derivative and conditioned on establishing a § 1985 violation); *Browder v. Tipton*, 630 F.2d 1149, 1154 (6th Cir. 1980).

### F.    State-Law Claims

In addition to bringing federal claims against Defendants, Plaintiff brings state-law claims against them. (*See* Compl., ECF No. 1, PageID.9–10.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

14

Furthermore, in determining whether to retain supplemental jurisdiction over state-law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants Sherrick, Dumminger, Turner, Heit, Margo, and Berrien County will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims against these Defendants. Because Plaintiff continues to have pending federal claims against Defendant Kirkpatrick, the Court will exercise supplemental jurisdiction over Plaintiff's state-law claims against Defendant Kirkpatrick.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Sherrick, Dumminger, Turner, Heit, Margo, and Berrien County will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state-law claims against these Defendants will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Kirkpatrick: Fourth Amendment claims, Fifth Amendment claims, Eighth Amendment claims, and § 1986 civil conspiracy claims. Plaintiff's Fourteenth Amendment

15

excessive force claims and state-law claims against Defendant Kirkpatrick remain in the case. Plaintiff's complaint will be served on Defendant Kirkpatrick.

An Order consistent with this Opinion will be entered.


Dated:      March 31, 2026                          /s/ Jane M. Beckering
                                                    Jane M. Beckering
                                                    United States District Judge