UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

______

DAYMOND JEAN CHARLES PECK,

Plaintiff,

Case No. 1:25-cv-725

v.

Honorable Jane M. Beckering

ROBERT JAMES KIRKPATRICK et al.,

Defendants.
____________________________________/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by Plaintiff Daymond Jean Charles Peck under 42 U.S.C. § 1983. By opinion and order entered March 31, 2026, the Court dismissed Plaintiff's claims against six of the seven named defendants and all claims except for one federal claim and state-law tort claims against the seventh defendant. (Op. and Order, ECF Nos. 13, 14.)

The remaining defendant is Berrien County Deputy Sheriff Robert James Kirkpatrick. In the remaining federal claim against Defendant Kirkpatrick, Plaintiff claims that Defendant Kirkpatrick used excessive force when removing Plaintiff from the courtroom, transferring him to a holding cell, and securing Plaintiff in the cell. (Op., ECF No. 13, PageID.90–92.)

This matter is now before the Court on Defendant Kirkpatrick's motion to dismiss for failure to state a claim and based on the qualified immunity doctrine. (ECF No. 22.) For the reasons set forth below, I recommend that the Court grant Defendant's motion and dismiss Plaintiff's remaining federal claim with prejudice. With regard to Plaintiff's state law claims, I

recommend that the Court decline to exercise supplemental jurisdiction over them and dismiss them without prejudice.

## Discussion

### I. Factual Allegations

In Plaintiff's complaint, he alleges that on January 15, 2025, at his trial, the judge "asked several deputies to remove [Plaintiff] from the courtroom."[1] (*Id.*, PageID.7.) Plaintiff states that the deputies present in the courtroom were Defendants Kirkpatrick, Sherrick, and Dumminger. (*Id.*) Plaintiff claims that at the time that he was removed, he "was not acting in a threatening manner or resisting." (*Id.*) Plaintiff claims that "[w]ithout being given a command or a chance to comply with one," Defendants Sherrick and Dumminger "seized [his] arms and lifted [him] to his feet," and that while these Defendants "had complete control over [Plaintiff's] person," Defendant Kirkpatrick "approached [Plaintiff] and shoved [Plaintiff] by the neck." (*Id.*)

Thereafter, when they were in the back hallway, Plaintiff "continuously notified the deputies that they were hurting [him] and that [he] wouldn't be a problem." (*Id.*) Plaintiff alleges that Defendant Kirkpatrick then "approached [Plaintiff] from behind and shoved [him] by the neck," and "this time [it was] harder than the first" time. (*Id.*) Plaintiff claims that some point, Defendant Turner "appeared to investigate the commotion." (*Id.*)

Subsequently, Plaintiff was placed in a holding cell, and "after becoming very distressed from the amount of force used against [Plaintiff, he] attempted to remove the stun cuff located on my right ankle due to [Plaintiff] feeling it was too tight." (*Id.*) Defendant Kirkpatrick then "came to the cell door and aimed a can of OC spray at [Plaintiff] through the track slot," and

[1] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

Kirkpatrick told Plaintiff "not to touch the stun cuff and submit to being handcuffed." (*Id.*) Plaintiff "complied," and Defendant Kirkpatrick entered the cell to remove the stun cuff. (*Id.*) Plaintiff told Defendant Kirkpatrick that he "was in pain and that the cuffs were too tight," and Defendant Kirkpatrick "responded by repeatedly shoving [Plaintiff] against the wall and telling [Plaintiff] to get against the wall." (*Id.*) "The stun cuff was removed and the deputies exited the cell and instructed [Plaintiff] to back up to the tray slot." (*Id.*) Plaintiff "complied," and Defendant Kirkpatrick "uncuffed one hand after twisting them very hard." (*Id.*) Plaintiff "pulled [his] free hand through the tray slot and struck [Kirkpatrick's] hand in an attempt to free [Plaintiff's] other right hand." (*Id.*) Plaintiff alleges that "[a]fter many verbal attempts of protecting [him]self and avoiding harm failed," Defendant Kirkpatrick "opened the cell door and sprayed [Plaintiff] in the face with OC spray." (*Id.*) Plaintiff "turned away and yelled stop," and Defendant Kirkpatrick "threw [Plaintiff] into the wall causing [Plaintiff] to hit [his] head." (*Id.*) Defendant Kirkpatrick then "began kneeing [Plaintiff] in [his] side and in return, [Plaintiff] turned around and struck him in the face." (*Id.*) Defendant Dumminger then "sprayed [Plaintiff] again with OC spray and they got [Plaintiff] on the ground." (*Id.*) Plaintiff was then "dragged out of the cell by the handcuffs." (*Id.*)

**II. Plaintiff Does Not Oppose the Motion to Dismiss**

Plaintiff's failure to file a response to Defendant Kirkpatrick's motion to dismiss is fatal to his position. This failure is both a forfeiture of his claim and a waiver of opposition to the relief sought in the motion. *See Notredan, L.L.C. v. Old Republic Exchange Facilitator Co.*, 531 F. App'x 567, 569 (6th Cir. 2013) (failure to respond to an argument that a claim is subject to dismissal "amounts to a forfeiture of [such] claim"); s*ee also, Scott v. Tennessee*, 878 F.2d 382 (6th Cir. 1989) (affirming district court's grant of the defendant's unopposed motion to dismiss, noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the

district court may deem the plaintiff to have waived opposition to the motion"); *Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (same); *Thorn v. Medtronic Sofamor Danek, USA, Inc*., 81 F. Supp. 3d 619, 631-32 (W.D. Mich. 2015) (granting defendant's motion to dismiss where "Plaintiff fatally provides no opposition to Defendants' arguments") (citing *Scott*, *Notredan*, and *Humphrey*). For this reason alone, Defendant Kirkpatrick's motion to dismiss should be granted.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Defendant Kirkpatrick seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

When resolving Defendant Kirkpatrick's dispositive motion, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light

most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiff's complaint is replete with unsupported inferences and legal conclusions. Nonetheless, on preliminary review, accepting as true Plaintiff's allegations that he did not resist Defendant Kirkpatrick during the escort to the holding cell or once Plaintiff was in the cell, the Court concluded that Plaintiff's allegations sufficed to state a claim against Defendant Kirkpatrick. (ECF No. 13, PageID.89–92.) In contrast, with regard to Defendants Sherrick and Dumminger, the Court concluded that Plaintiff's allegations regarding the force used or the extent of his resistance failed to provide sufficient facts to demonstrate that the force used was unreasonable. (*Id.*)

One important thing has changed since the Court permitted Plaintiff's excessive force claim to go forward against Defendant Kirkpatrick. Defendant Kirkpatrick has submitted a bodycam video recording of Plaintiff's removal from the courtroom and escort to the holding cell, and the incidents that occurred while Plaintiff was in the holding cell. Plaintiff was certainly aware of the video recording because he specifically referenced it in his complaint. (Compl., ECF No. 1, PageID.12 (noting that "videos of the claims at hand are preserved in discovery" from Plaintiff's criminal case).) As the Sixth Circuit recently reiterated in *Benderoff v. Johansen*, No. 25-1315,

2026 WL 93226, at *2 n.2 (6th Cir. Jan. 13, 2026) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)), "[a] document attached to a motion to dismiss can form part of the pleadings where the complaint refers to this document and it is central to the plaintiff's claim."

This rule also applies to video exhibits, including body cam footage. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (approving consideration of video evidence on motion to dismiss where the video "cover[ed] the whole [incident]" and "utterly discredit[ed]" plaintiff's version of events); *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *3 (6th Cir. Aug. 18, 2022) (affirming consideration of dash cam and body cam footage on motion to dismiss where "the complaint reference[d] the video," the video "captured the central events upon which the [plaintiff's] claims rely," and "neither party contested the inclusion of the videos"). The Sixth Circuit has specifically noted that there is "good reason" to consider videos when assessing a motion to dismiss based on qualified immunity. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) ("[W]hen uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the videos."). The use of video evidence is limited, however, such that "[i]f there is a factual dispute between the parties, [the court] can only rely on the videos over the complaint to the degree the videos are clear and blatantly contradict or utterly discredit the plaintiff's version of events." *Id.*

**A. Use of Excessive Force**

At the time of the events alleged in Plaintiff's complaint, it appears he was a pretrial detainee. In *Kingsley v. Hendrickson*, the United States Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). Specifically, the United States Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively

unreasonable." *Id.* at 396–97. The Supreme Court explained that "[a] court (judge or jury) cannot apply this standard mechanically," noting that "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (citations omitted). The Supreme Court further explained that the following non-exclusive factors "may bear on the reasonableness or unreasonableness of the force used:"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citation omitted).

When the Court conducted its preliminary review of Plaintiff's complaint, it applied the *Kingsley* standard. (Op., ECF No. 13, PageID.91 ("Applying the standard set forth in *Kingsley*, the Court concludes . . .").) With regard to Defendants Dumminger and Sherrick and Plaintiff's removal from the courtroom, the Court explained:

> In Plaintiff's complaint, he alleges that on January 15, 2025, at his trial, the judge "asked several deputies to remove [Plaintiff] from the courtroom," and the deputies present in the courtroom were Defendants Kirkpatrick, Sherrick, and Dumminger. (Compl., ECF No. 1, PageID.7.) Plaintiff claims that at the time that he was removed, he "was not acting in a threatening manner or resisting" and that "[w]ithout being given a command or a chance to comply with one," Defendants Sherrick and Dumminger "seized [his] arms and lifted [him] to his feet." (*Id.*)

(*Id.*, PageID.90.) The Court found that that Plaintiff alleged no other use of force by Dumminger or Sherrick during that specific interaction and that Plaintiff did not allege any injury. The Court concluded that Plaintiff's allegations did not suffice to show an objectively unreasonable use of force.

During a later interaction between Defendant Dumminger and Plaintiff, where Plaintiff "struck [Defendant Kirkpatrick] in the face," Defendant Dumminger then "sprayed [Plaintiff] . . . with OC spray and they got [Plaintiff] on the ground." (Compl., ECF No. 1,

PageID.7.) Although the force used was far greater than the force used in the courtroom, the Court again concluded that the facts alleged by Plaintiff were not sufficient to show an objectively unreasonable use of force. The Court explained: "Plaintiff's own factual allegations show that he was uncooperative and that he had used force against a deputy prior to Defendant Dumminger using the OC spray." (Op., ECF No. 13, PageID.92.)

Plaintiff's allegations regarding Defendant Kirkpatrick's use of force provided much more information. Although Plaintiff maintained that he neither threatened nor resisted, he alleged that after Dumminger and Sherrick pulled Plaintiff to his feet in the courtroom:

> Defendant Kirkpatrick then "approached [Plaintiff] and shoved [Plaintiff] by the neck." Thereafter, when they were in the back hallway, Defendant Kirkpatrick "approached [Plaintiff] from behind and shoved [him] by the neck," and "this time [it was] harder than the first." Subsequently, Plaintiff was placed in a holding cell, and while in the holding cell, Plaintiff told Defendant Kirkpatrick that he "was in pain and that the cuffs were too tight," and Defendant Kirkpatrick "responded by repeatedly shoving [Plaintiff] against the wall and telling [Plaintiff] to get against the wall." The deputies then exited Plaintiff's cell, and through the tray slot, Defendant Kirkpatrick "uncuffed one hand after twisting them very hard." Plaintiff then "pulled [his] free hand through the tray slot and struck [Kirkpatrick's] hand in an attempt to free [Plaintiff's] other right hand." Plaintiff alleges that "[a]fter many verbal attempts of protecting [him]self and avoiding harm failed," Defendant Kirkpatrick "opened the cell door and sprayed [Plaintiff] in the face with OC spray." Plaintiff "turned away and yelled stop," and Defendant Kirkpatrick "threw [Plaintiff] into the wall causing [Plaintiff] to hit [his] head." Defendant Kirkpatrick then "began kneeing [Plaintiff] in [his] side and in return, [Plaintiff] turned around and struck him in the face."

(*Id.*, PageID.90–91 (citations to the complaint omitted).) In light of the alleged absence of resistance, the Court could not determine whether the greater uses of force described were objectively unreasonable. Plaintiff's account, however, is blatantly contradicted and utterly discredited by the bodycam video.

Defendant Kirkpatrick describes the video recordings in his brief. (ECF No. 23, PageID.117–119.) The description is accurate. Despite being represented by counsel, Plaintiff began questioning the witness, his "baby-mama," from the defense table. He was instructed by the

trial judge, his counsel, the prosecutor, and the deputies to be quiet. He refused. He was yelling and swearing in the courtroom. His response to the directions of the deputies and others was "or what?" He asked what the deputies would do, beat him for talking? As Plaintiff continued to defy the judge and the deputies, the deputies grabbed Plaintiff's arms and began escorting him out of the courtroom. The deputies held Plaintiff by his arms and one deputy had a hand on Plaintiff's neck, but there is no evidence that Plaintiff was shoved hard on his neck as alleged in the complaint. Plaintiff protested that the deputies had laid hands on him for nothing, that he was not resisting. Plaintiff made those statements while he was physically resisting being restrained and threatening the deputies. Plaintiff continued to argue with the deputies through the entire escort, becoming angrier and angrier. By the time the group arrived at the holding cell, Plaintiff was yelling and telling Defendant Kirkpatrick to keep his hands off Plaintiff. As the deputy closed the cell door, Plaintiff told the deputy that he was a lucky bitch as Plaintiff slammed his right fist into his left hand twice. Plaintiff continued to rant that he had not done anything as the deputy locked the door.

The second video tape begins about three minutes after the first video ended. Based on Plaintiff's allegations, however, none of the interactions between the deputies and Plaintiff were missed by the video. The deputies returned to Plaintiff's holding cell because Plaintiff attempted to remove the stun cuff that had been placed around his ankle for the court proceedings. Defendant Kirkpatrick arrived at the cell and advised Plaintiff to place his hands behind his back and through the slot in the cell door so that he could be handcuffed and the stun cuff could be removed. Plaintiff continued to yell and threaten the deputies. Defendant Kirkpatrick and Deputy Turner entered the cell to remove the stun cuff. They directed Plaintiff kneel on the bench and lean against the wall. Plaintiff refused to comply, physically resisted leaning against the wall, and again threatened the deputies. Deputy Turner removed the stun cuff. The deputies left the cell and closed the door.

Defendant Kirkpatrick began removing the handcuff as Plaintiff placed his hands through the slot in the door. Plaintiff continued to complain and yell. When one cuff was removed, Plaintiff pulled back, ripping the loose cuff out of Defendant Kirkpatrick's hand and taking the double lock "pen" with him. Defendant Kirkpatrick and Deputy Turner entered the cell. Defendant Kirkpatrick began to pepper spray Plaintiff. The deputies directed Plaintiff to get on the ground. He physically resisted. More deputies intervened. It took five deputies to restore order. They handcuffed Plaintiff again and removed him to another cell.

For a couple of minutes, however, it was chaotic. Because of the chaos, there are brief periods where the view offered by the camera is obscured. Nonetheless, there are no "relevant gaps or uncertainties left by the video" that would permit the Court to view the incident in a light sufficiently favorable to Plaintiff to support Plaintiff's claim of excessive force. *Nash v. Bryce*, 157 F.4th 436, 453 (6th Cir. 2025) (quoting *LaPlante v. City of Battle Creek, Mich.*, 30 F.4th 572, 578 (6th Cir. 2022)) (internal quotation marks omitted).

Accepting Plaintiff's allegations as true, except where they are blatantly contradicted by the video, the undersigned concludes that Plaintiff has failed to allege facts that show an objectively unreasonable use of force. Accordingly, I recommend that the Court dismiss Plaintiff's remaining claim against Defendant Kirkpatrick for failure to state a claim.

**B. Qualified Immunity**

Defendant Kirkpatrick also asks the Court to dismiss Plaintiff's excessive force claim because Defendant Kirkpatrick is entitled to qualified immunity. Under this defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every

reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The qualified-immunity inquiry involves two questions: whether the defendant violated a constitutional right and whether that right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).

Defendants' qualified immunity defense is based on the video recordings that blatantly contradict Plaintiff's allegations. The videos show that Defendant Kirkpatrick used force in response to progressively increasing resistance from Plaintiff. Pepper spray was not used until Plaintiff pulled away from Defendant Kirkpatrick taking the handcuff "key" with him. Force was not applied at all until Plaintiff refused to comply with the direction to get down on the floor. Plaintiff fought against the force used until four deputies finally managed to hold him still on the floor near the cell doorway.

Plaintiff's excessive force claim collapses on the first qualified immunity question. Based on the facts construed in Plaintiff's favor, except as blatantly contradicted by the video record of the events, there is no constitutional violation here. Accordingly, Defendant Kirkpatrick is entitled to qualified immunity. For that reason, as well, Plaintiff's claim against Defendant Kirkpatrick is properly dismissed.

**IV. State Law Claims**

Plaintiff seeks to invoke this Court's supplemental jurisdiction over state-law tort claims for Defendants' negligence, negligence per se, intentional infliction of physical pain, intentional infliction of emotional distress, and deprivation of rights under state law. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, I recommend that Plaintiff's state-law claims be dismissed without prejudice.

## Recommendation

I respectfully recommend that the Court grant Defendant Kirkpatrick's motion to dismiss with prejudice for several reasons: it is unopposed, Plaintiff's complaint fails to state a claim for the excessive use of force against a pretrial detainee, and Defendant Kirkpatrick is entitled to qualified immunity based on the record before the Court. Moreover, I recommend that the Court dismiss Plaintiff's state-law claims without prejudice because it declines to exercise supplemental jurisdiction over those claims. If the Court adopts these recommendations, it will resolve all remaining claims against the only remaining party.

Dated: October 23, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).